**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| JAMES NEWMAN, | |
| Plaintiff/Counterclaim-Defendant, | |
| v. | Case No.: 2:12-CV-248-JVB-PRC |
| GAGAN, LLC, and<br>THINK TANK SOFTWARE<br>DEVELOPMENT CORP., | |
| Defendants/Counterclaimants. | |

**OPINION AND ORDER**

Following his employment termination in June 2011, Plaintiff James Newman sued three Gagans: Gagan, LLC, Laurie Gagan, and James Gagan, Jr.[1] Plaintiff also sued Think Tank Software Development Corporation. Plaintiff's only remaining claims are for violations of the Americans with Disabilities Act, as amended, and for wrongful discharge in retaliation for pursuing worker's compensation. Defendants Gagan and Think Tank responded with counterclaims for breach of an employment agreement, breach of a confidentiality agreement, conversion, and computer trespass.

The parties traded motions for summary judgment.

---

[1] Laurie and James Gagan are no longer parties to this case. As a result, this order uses "Gagan" without a first name to refer to Gagan, LLC.

**A.     Facts**

When considering motions for summary judgment, the Court views the facts in the light most favorable to the non-moving party. Here, that light shifts because all remaining parties moved for summary judgment.

The Court's Opinion and Order entered on March 28, 2013, summarizes the allegations in Plaintiff Newman's complaint. (DE 38.) The Court now presents a brief summary of the facts, synthesizing the complaint, counterclaims, and summary judgment briefing.

Before his employment at Gagan and Think Tank, Newman suffered from ADHD, anxiety, and depression, for which he took prescribed medications.

Newman entered into an Employment Agreement and Confidentiality Agreement with Gagan, and Think Tank in May 2010. Newman served as an "Accounting Business Analyst."

In the early, halcyon days, Newman intended to remain with the "Gagan Family of Companies" until retirement. (Compl., DE 1, ¶ 17.) As early as July 6, 2010, Newman occasionally worked remotely for Defendants. (Pl.'s App., DE 90, ¶ 68.) Newman claims Defendants authorized him to use Microsoft Outlook remotely, which automatically saved to his personal computer a copy of all work-related emails sent to or received by Newman. (*Id.* at ¶¶ 69, 86.) Defendants dispute this. (Defs.' Br. Supp. Mot. Summ. J., DE 93, ¶¶ 75–77.)

In January 2011, Newman slipped and fell and injured his left leg. Defendants allowed Newman to go on an unpaid leave of absence to heal. (*Id.*, ¶ 28.) He made a claim with Gagan's worker's compensation insurance provider regarding this injury. He claims he performed essential functions of his accounting position from home from January through March 2011.

(Pl.'s App., DE 90, ¶ 50.) In March 2011, Newman told Laurie Gagan that he and his family would travel to the United Kingdom for two weeks.

The doctor released Newman to return to work with restrictions on April 18, 2011. Newman claims he asked for accommodation of these medical restrictions. (Compl., DE 1, ¶ 23.) CNA (which was paying Newman temporary total disability benefits) set an accommodation meeting between Newman and Gagan for April 18, 2011. But, according to Newman, Jim Gagan cancelled it after Defendants learned Newman had retained legal counsel. (Pl.'s App., DE 90, ¶¶ 34–36.) Newman claims Defendants refused to accommodate him. (Compl, DE 1, ¶ 27.)

Around June 8, 2011, Defendants informed Newman they had eliminated his position, and placed him on a leave of absence. Defendants retained their other accountant, Jennifer Jimenez. Defendants said they would consider him for future openings once his doctor "fully released" him to return to work. (*Id.* ¶ 29.) According to Defendants, Gagan's business declined from 2010 until the company closed in 2014. (Defs.' Br. Supp. Mot. Summ. J., DE 93, ¶ 52.)

Newman returned to work around June 21, 2011, as an "Assistant Marketing Room Manager," with a decreased rate of pay. Newman did not have managerial duties in the marketing room, but worked as a telemarketer. Newman claims he performed satisfactorily during his first week as a telemarketer. (Compl., DE 1, ¶ 42.) But Defendants claim he committed numerous policy violations, including tardiness and insubordination. (Defs.' Br. Supp. Mot. Summ. J., DE 93, ¶¶ 58–71.) Around June 28, 2011, Defendants terminated Newman.

Defendants demanded he return "all property, equipment, lists, books, records, or other materials of Gagan, LLC , d/b/a DirectBuy of Southlake, or Think Tank Software Development."

(Pl.'s App., DE 90, ¶ 64, citing DE 53 at 12, and DE 51-1 at 52–53.) Newman claims he complied with this request. Defendants claim he did not.

**B.      Pending claims and procedural posture**

Plaintiff's only claims that survived the dismissal orders (DEs 38 and 67) are counts I and III of the complaint, against only Defendants Gagan and Think Tank:

- Count I brings claims under the Americans with Disabilities Act, as amended, for failure to accommodate, disparate treatment, and retaliation, culminating in termination.

- Count III brings a claim for wrongful discharge in retaliation for pursuing a worker's compensation claim.

Gagan and Think Tank bring four counterclaims against Plaintiff arising out of his handling of Defendants' electronic information:

- First cause of action: breach of contract—Employment Agreement. Defendants claim Plaintiff breached the Employment Agreement by failing to return all property belonging to the Defendants, and by performing work for others while employed by Defendants.

- Second cause of action: breach of contract—Confidentiality Agreement. Defendants claim Plaintiff breached the Confidentiality Agreement by disclosing protected information to outside third parties, maintaining possession of electronic or physical copies of documents containing protected information, and using protected information for his own purposes.

- Third cause of action: conversion. Defendants claim that after termination, Plaintiff kept, and continues to retain, property belonging to Defendants, despite written demand for return.

- Fourth cause of action: computer trespass. Defendants claim Plaintiff knowingly and intentionally accessed Defendants' computers, e-mail systems, and network without consent.

Newman moved for summary judgment twice: as Plaintiff and as Counterclaim Defendant. (DEs 85 and 87.)

Defendants also moved for summary judgment. (DE 92.)

**C.    Summary judgment standard**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

D.  Discussion

Newman, Gagan, and Think Tank all seek summary judgment. But multiple genuine issues of material fact preclude summary judgment.

There are genuine issues of material fact regarding whether the ADA applies to Think Tank, regarding whether Newman was a qualified individual with a disability at all relevant times, regarding whether Defendants caused a breakdown in the interactive process regarding accommodations, regarding the nature of the leave, regarding the date Newman could first have returned to work with accommodations, regarding the context and meaning of various statements, regarding the reasons for Newman's termination, regarding the scope of Newman's authority to access Defendants' computer systems, regarding the process by which Newman's personal computer acquired Defendants' electronic information, regarding the characterization of various sections of deposition testimony, and regarding other issues.

Construing the facts in the light most favorable to the non-moving parties, and resolving ambiguities in their favor, the Court cannot conclude that any party is entitled to judgment as a matter of law.

But there is one small exception. Newman asks the Court to enter an order determining as a matter of law that during relevant times Defendant Gagan, standing alone, met the ADA's definition of an "employer." Gagan acquiesces. (Defs. Br. Opp'n Pl.'s Mot. Partial Summ. J., DE 111 at 16.) Therefore, the Court concludes that Gagan, standing alone, met the ADA's definition of an "employer" during the relevant time period.

**E.     Conclusion**

Accordingly, the Court DENIES the motions for summary judgment (DEs 85, 87, and 92), with the small exception noted above.

**SO ORDERED** on September 22, 2016.

s/ Joseph S. Van Bokkelen  
JOSEPH S. VAN BOKKELEN  
UNITED STATES DISTRICT JUDGE